## MOORE et v EVANS

## MOORE et v SCHROEDER

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 25, 1932

Vern Thomas for plaintiffs in error.

C. W. Osborne, Youngstown, and William E. Lewis, Youngstown, for defendants in error.

POLLOCK, J.

The question in this case whether the parties were removed legally, no charges having been made against them, depends upon whether they were in the unclassified division of the city or the classified. If they are in the unclassified, they could be removed at the pleasure of the Mayor and department heads, but in the classified service they could only be removed on charges being preferred.

It is urged first that the trial court was without jurisdiction in hearing this case, for the reason that upon being removed these parties should have appealed to the Board of Appeals of the civil service department. That would have been correct if charges had been made against them and removed upon that ground, but, if under civil service, they could not be removed peremptorily without charges, so that nothing further need be said in that regard.

We will now dispose of these cases under the Evans case alone. It is first urged that Evans, as commissioner of parks and play grounds, held his position under the pleasure of the Mayor and could be removed as head of a department and by the Mayor. Section 4 of the charter of this city provides, as far as we need refer to it, referring to the Mayor:

"He shall appoint and may remove the heads of all departments, except as otherwise provided in this chapter."

It is not claimed that the division of parks and play grounds is a department, but it is a division under the department of public works. It is urged that because the city never did appoint a director of the department of public works, therefore the head of this division stands in the same relation to the Mayor as the head of a department. That depends upon the construction of certain sections of the charter. Section 21 reads as follows:

"The mayor shall be ex-officio director of the department of public works, the department of health and public welfare and the department of water and other public utilities."

In other words, the city has not provided in the charter for a director of the department of public works, but has provided that the Mayor shall be ex-officio director. The Mayor is the director of that department until the city amend its charter and provide for a director. The next section reads:

"The work of the several departments shall be distributed among such divisions thereof as are established by this charter. There shall be a commissioner or head of each division, who shall be appointed, and may be removed, by the director of the department with the concurrence of the mayor, in conformity with the civil service provision of this charter."

So that in as plain language as it could be written, this charter provides that the mayor should be the head of this department, and that the commissioner of divisions in departments can only be removed by the Mayor and director of the department under civil service rules. In this case there was no head of the department except the Mayor. He is the head of that department and he could remove only as the section above provides, under civil service rules.

It is further urged that under the provisions of the Code, §486-8, GC, a commissioner of this division of the department would be in the unclassified list and be removable by the mayor. We need not discuss this section now. There is further question urged in this case that will dispose of this, except to say that as far as this provision is concerned, we think the provision of the city charter controls.

There is the further question urged that this section 22 does not control entirely, and our attention is called to the case of **State ex Franke v Menshall, 10 Oh Ap, 86.** The syllabus reads as follows:

"The office of a sealer of weights and measures may be discontinued by a mayor by refusing to name a successor and by removing a holdover appointee of a previous administration, notwithstanding the fact that council has fixed the compensation and bond of such officer, who has passed a non-competitive civil service examination, since §4318 GC leaves it optional with a mayor whether or not there shall be a sealer of weights and measures and makes his term coextensive with that of the mayor appointing him."

The difference in this proposition is that in the commissioner of parks and play

grounds there is no term. It does not expire with the term of the mayor, and the second proposition is that the mayor can not, or at least so far as appears from this record, dispense with the office of commissioner of parks and play grounds, which the mayor did in the case referred to, remove this man and then dispense with the office of sealer of weights and measures.

It is next contended that notwithstanding that Evans took the competitive examination in 1912 and was appointed as superintendent of parks, yet he is not holding that position at the present time, or rather under the charter; that the position was changed, and that section 63 of the charter does not protect him. Section 63 provides:

"All persons holding positions in the classified service of the city pursuant to appointment from eligible lists at the time this charter takes effect, or who have been continuously in the service of the city in the same position for five years next preceding, shall retain their positions, or any similar positions created by this charter, until discharged, promoted or transferred in accordance with the provisions hereof."

It is admitted that as far as this section is concerned that if Evans was holding the same position or similar position as he did prior to the adoption of the charter, that he was under civil service, but if the position had been changed and he was not now holding a similar position, that he would not be under civil service and so could be removed. Prior to the adoption of the charter the commission for parks and play grounds consisted, under §4057 GC, of a commission of three persons, who had the management and control of the parks and play grounds under that section and §4059 GC. §4061 GC provided that this commission could make appointments, and among them superintendent of parks. So far as the duty of the superintendent of parks under the civil code is concerned, this is all that was provided. His duties were provided by the commission. They had control, superintendency and charge of the parks, and what he did prior to the adoption of the charter was done by some rule or regulation of the commission. He performs under the charter practically the same duties as the commissioner did under the statute, but he works under the approval of the mayor. In other words, the mayor seems to be head of the Division of Parks and Playgrounds, if he sees fit to exercise it, and the commissioner now works with the approval of the mayor.

In the trial of the case below Mr. Evans testified, and he was asked:

"Q. Was or was not the position of commissioner of parks, as you have filled that position since January 1, 1924, identical with the position of superintendent of parks, which you filled preceding January 1, 1924?
A. I would say they were identically the same, only I was under the park commission at that time and under this I was under the mayor.
Q. You mean under the charter you were under the mayor?
A. Yes, under the mayor."

The court asks a few questions:

"Q. That is, on the 31st of December, 1923, you were superintendent of parks under a commission?
A. Yes, sir.
Q. And on the 1st of January, 1924, you were commissioner of parks, doing the same work, appointed—or under the mayor, rather?
A. Yes, sir.
Q. But you received no special appointment?
A. No sir."

So that under his testimony he was rendering before the charter the same service as he has since the charter was adopted, only he was superintendent of parks under the charter and not commissioner of parks. While there is not anything in the record, we presume that the commission provided for by the Code did not actually take charge of these parks themselves. They appointed a superintendent and he took charge of them, just as he is now doing, but under their supervision and direction, so while from the record itself it would be somewhat hard to say that it was the same position, or similar position, rather, but under this evidence, and what no doubt was the reasonable way for the commissioner to take care of the parks, this man did the same work, practically, or similar work under the charter that he had prior to that time. We think he is now in a similar condition, to what he was before the adoption of the charter.

The next claim is that the city of Youngstown has no civil service regulations, that the civil service provisions of the city are in conflict with §484-19 GC. The section of the Code provides that a commission and other chief appointing officers shall be appointed by the mayor of the city, who shall be the civil service commission, hold

examinations and do the other things required to select those who are on the eligible list, while the provisions of the charter provide that directors of the department shall hold the examinations, and then provides that appointments shall be made from the eligible list under that examination. There is this difference in these two provisions, that the Code requires a commission and the charter does not require a commission, but under the charter the duties of the commission are performed by the heads of each department for that department. Then we come to the question of whether this is in conflict with the statute under the provisions of the constitution of this state. **Section 7 of Article XVIII** provides for home rule:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self government."

Section 3 of this article provides:

"Municipalities shall have authority to exercise all powers of local self government and to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws."

The question to be determined in this case is whether this provision of the charter, the examination under the civil service rules, is in conflict with the provisions of the Code. This question has been before the Supreme Court a number of times. We will not try to refer to all of the cases. In the case of **State ex Lentz et Civil Service Commission v Edwards et, 90 Oh St**, beginning on page 305, the opinion is by the court, and on page 309, it is held as follows:

. "It would not be contended that the civil service of a city is not a matter of municipal concern nor that the power of regulating that service is not one of the powers of local self government. These powers are referred to by Shauck, J, in **State ex Toledo v Lynch**, found in **88 Oh St, 71**, as follows: 'They are such powers of government as, in view of their nature and the field of their operation, are local and municipal in character.' And in Fitzgerald v City of Cleveland it is said they 'are clearly such as involve the exercise of the functions of government, and they are local in the sense that they relate to the municipal affairs of the particular municipality.'

The manner of regulating the civil service of a city is peculiarly a matter of municipal concern. One of the powers of local self government is the power of legislating with reference to the local government within the limitations of the constitutional provisions above referred to. As long as the provisions made in the charter of any municipality with reference to its civil service comply with the requirement of §10 of Article XV, and do not conflict with any other provisions of the constitution, they are valid and under the cases referred to discontinue the general law on the subject as to that municipality. That provisions adopted by a city might differ from the general laws within the limits defined was not only expected but the very purpose of the amendment was to permit such differences and make them effective."

We refer to the case of **Lorain Street Road v Public Utilities Commission of Ohio, 113 Oh St, 68**. This case is one in which there was no syllabus. It is by the court and while all of the members of the court concurred in that judgment, Marshal, CJ, writing a separate opinion. This quotation is taken from his opinion:

"These cases and others which will hereafter be noticed have settled the proposition that there are some powers of local self government which may be exercised by municipalities, regardless of conflict with general laws. While this court has never declared in a single case any definite rule for determining which powers and functions of municipalities may be classed as local self government, a survey of the cases which have been decided by this court does state lines of distinction from which a rule can be evolved."

And then on the next page:

"The line of distinction running through the foregoing cases is that matters of health and public schools are matters of general governmental cognizance, not to be affected by special local regulations, and, on the other hand, that those matters which relate to the internal government of a municipality, such as local elections of municipal officers and the powers, duties and functions of such municipal officers, are matters of local self government, which may not be influenced or controlled by general laws."

Referring to the case of **Dillon v Cleveland, 117 Oh St, 258**, in the opinion it is said:

"In its last analysis this controversy turns upon the inquiry whether a zoning ordinance is a matter of local nature, and whether the manner of invoking a referendum upon any ordinance is likewise local in character."

In that case the question was whether the provisions of the charter of the city conflicted with the general laws, the court holding that they did not.

We draw from all these decisions of the Supreme Court of this state just this rule, when the conflict between the charter of a city and the general legal provisions of the state, is a matter wholly of internal interest and does not affect the citizens of the state outside of the municipality, there is no conflict, but if it does, there is a conflict and the charter provision is void, being prohibited by the constitution. We think the provisions of the charter of this city providing for civil service examinations, which are not the same as the Code provisions providing for civil service examinations, are not in conflict. As there is no claim made that the civil service provision of this city is in conflict with the constitution of this state, §15, Article X, we think it is a valid civil service provision so far as the city of Youngstown is concerned.

We then come to the question whether mandamus is the proper remedy. Our attention has been called to a great many decisions in which when a person claiming an official position is seeking not only to regain that position but to declare the party holding it is not rightfully in the office, that the action must be by quo warranto. It appeals to us very strongly that quo warranto would be the proper remedy, but we think the Supreme Court of this state has settled that proposition so far as appointments such as this one is concerned. In the case of State ex Moyer v Baldwin, 77 Oh St, 532, which is a case from this county, it is said:

"Mandamus is the proper remedy to restore a party to an office from which he has been illegally removed."

In that case the mayor had removed, after a hearing, some one in the police department—I don't remember what the title of the position was—when he had no right to remove him. All the mayor could do was to suspend the officer and prefer charges. The party removed, Moyer, brought an action in mandamus. Before that action was tried and while it was pending, the position, whatever it was, was changed, dividing it into two parts, and appointed two persons, one for each part, and the Supreme Court upon hearing that case announced the positive provision or rule that we have just read.

The opinion consists largely of citations. There are a number of citations from courts of last resort in other states holding that this was the proper remedy, and on page 553, just before the close of the opinion, the court said:

"The restoration of relator to his office and the ousting of the person who was appointed to succeed him, does not present a case of determining title to an office, because his removal having been absolutely void, the pretended appointment is a mere nullity."

That is the distinction the court makes.

There is one other proposition urged and that is before remedy of mandamus is available, there must be a demand made on the officer to perform the duty. Our attention is called to a great many citations and authorities, and reputable ones, that demand is necessary. It is ordinarily necessary because the relief in mandamus is just what ordinarily the word means, that the officer must do something he has not done. Ordinarily the officer whom the action is against, there is a claim made that he should have done something that he has not done, so that his attention must be called to the duty and demand made to perform the duty, but in this case the mayor had acted affirmatively in placing a party in this position and attempting in that way to remove Evans, and we think no demand was necessary because of his affirmative action.

This includes all of the claims made and it follows that the judgment of the court below is affirmed. Exceptions noted. The judgment is also affirmed in the Schroeder case and exceptions noted.

Judgment affirmed.

ROBERTS and FARR, JJ, concur.